UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JACQUELINE BROWNRIGG,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:14-CV-940-RDP |
| **WALGREENS PHARMACY,** | } |
| Defendant. | } |

**MEMORANDUM OPINION**

Visually impaired individuals often depend on environmental cues to inform them of potential hazards. One such cue involves the use of truncated domes or detectable warning pavers. These distinctly textured walking surfaces can help to warn pedestrians of an impending hazard on the route ahead. When Congress passed the Americans with Disabilities Act in 1991, and following the adoption of regulations implementing the Act, certain provisions of the law were adopted which require companies who are building facilities to provide certain safety features as part of that construction.[1]  28 C.F.R. § 36.406 (1991).  One of those provisions requires the use of truncated domes.  The question presented here, quite ironically, is whether truncated domes (designed to give warning to the visually impaired) present an open and obvious hazard to persons (such as Plaintiff) who are not visually impaired.

---

[1] In 1991, the United States Department of Transportation and the United States Department of Justice developed regulations for new construction and alterations.  As part of these ADA Access Guidelines ("ADAAG"), since 1993, truncated domes have been the standard design requirement for detectable warnings on curb ramps and in flushed transitions from sidewalks to street crossings. 28 C.F.R. Part 36, Appendix A (1993); ADAAG §§ 4.29.2, 4.29.5.  In 1994, the US Access Board temporarily suspended the standard. 28 C.F.R. § 36.407 (1994). However, in 2001 the suspension was allowed to expire and that reestablished the mandate. *See id*. (1998).

This matter is before the court on (1) Defendant's Renewed Motion for Summary Judgment (Doc. # 29), and (2) Defendant's Motion to Strike (Doc. # 34). The Motions have been fully briefed. (Docs. # 30, 31, 35 and 36).

## I.   Summary of Relevant Facts[2]

On or about April 20, 2012, Plaintiff Jacqueline Brownrigg ("Plaintiff" or "Brownrigg") was a customer at the Walgreens store located at 2101 Richard Arrington, Jr. Boulevard, South, in Birmingham, Alabama. (Doc. # 1-1, ¶ 2; 4). Brownrigg is a regular customer of that particular store. She testified that she was at the store "[e]very other day, if not every day." (Doc. # 29-2 at 14:20). She continued to shop at the store on a regular basis after the accident at issue in this case. (Doc. # 29-2, 15:2-6).

Near the entrance to the store and adjacent to a handicapped parking spot, there is an area of reddish, sloped, textured pavement. (Doc. # 29-4). The pavement is patterned with small, raised, flat-topped domes referred to as "truncated domes." (Doc. # 29-4).

The truncated domes were part of the original design of the store. At the time of the store's construction in 2002, the truncated domes were a required construction feature under the Americans with Disabilities Act and the ADAAGs.[3] (Doc. # 29-5). The purpose of the domes is to alert people who are blind or visually impaired of impending drop-offs or vehicular traffic. See 28 C.F.R. Part 36, Appendix A (1993); ADAAG §§ 4.29.2, 4.29.5.

---

[2] If facts are in dispute, they are stated in the manner most favorable to the non-movant, and all reasonable doubts about the facts have been resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox. v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[3] Again, as noted in footnote 1 *supra*, by 2002, any suspension imposed as to the original rule and standard had been lifted and the mandate was reestablished.

Plaintiff's accident occurred after she had been in the store and was returning to her car. (Doc. # 29-3, 23:3; 31:3-5). It was daylight, and Plaintiff's view of the truncated domes was unobstructed. (Doc. # 29-3, 21:9 – 24:19). There was no defect in the truncated domes. (Doc. # 29-3, 22:5-9).

Plaintiff testified that one of the domes caused her to fall. (Ex. B, 23:9-15). She stated that, while she was walking on the domed surface, one of the domes caused her right foot to twist. (Doc. # 29-3, 31:2-23; 32:1-23). She was able to brace herself with her right hand which prevented her from falling to the ground. (Doc. # 29-3, 32:15-23).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts

3

and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be grated. *See id.*, at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on [her] allegations made in the complaint; instead, as the party bearing the burden of proof of trial, [s]he must come forward with at least some evidence to support each element essential to [her] case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by a plaintiff are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp.2d 1257, 1262 (D.Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one

party must prevail as a matter of law.'"  *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.   Analysis

Plaintiff's Complaint asserts the following claims: Count I – Negligence; Count II – Negligence Per Se; and Count III – Wantonness.  (Doc. # 1-1).  The court addresses each claim below.

#### A.   Negligence

In order to recover on a negligence claim, a plaintiff must prove a breach of a duty owed and that the breach proximately caused injury or damage.  *Lowe's Home Ctrs., Inc. v. Laxson*, 655 So.2d 943, 945-46 (Ala. 1994).  Here, without question, Plaintiff was a business invitee at Defendant's premises.  The duty a premises owner owes to an invitee is well established: "The duty owed to an invitee by [a business] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition.'"  *Cook v. Wal-Mart Stores, Inc.*, 795 F.Supp.2d 1269, 1273 (M.D. Ala. 2011) (quoting *Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d 1049, 1054 (Ala. 2003)) (internal quotations marks, brackets and citations omitted).  As the Alabama Supreme Court has reiterated, "[t]he storekeeper is not an insurer of the customers' safety but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition." *Cook*, 795 F.Supp.2d at 1273 (quoting *Dolgencorp, Inc. v. Hall*, 890 So.2d 98, 101 (Ala. 2003) (in turn quoting *Cash v. Winn–Dixie of Montgomery, Inc.*, 418 So.2d 874, 876 (Ala. 1982)) (internal quotations omitted).

The "entire basis of a [business's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries." *Cook*, 795 F.Supp.2d at 1273 (quoting *Fowler v. CEC Entm't*, 921 So.2d 428, 432-33 (Ala.Civ.App. 2005) (in turn quoting *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194 (Ala. 2002)) (internal quotations omitted).

> The duty to keep premises safe for invitees applies only to defects and conditions which are in the nature of *hidden* dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and *would not be observed by him in the exercise of ordinary care*. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.

*Lamson & Sessions Bolt Co. v. McCarty*, 234 Ala. 60, 63, 173 So. 388, 391 (1937) (quoting 45 C.J. § 244, p. 837) (emphasis added). "[T]he focus of our premises liability law is not on the care that may have been exercised by the invitee ..., but on relieving a premises owner of a legal liability where an invitee knew of the danger that caused the injury or should have observed that danger through the exercise of reasonable care." *Ex parte Industrial Distribution Servs. Warehouse*, 709 So.2d 16, 20-21 (Ala.1997) (emphasis added).

Plaintiff argues that the truncated domes were unreasonably dangerous. But in light of the fact that the domes were originally a requirement imposed by the ADAAG, it does not follow that their use is a breach of any duty owed. Moreover, the photographs in the record make this much abundantly clear: even if the domes could be considered a danger, they were an open and obvious "hazard." The Alabama Supreme Court has expressly rejected the notion that an invitor owes a duty to eliminate open and obvious hazards or to warn an invitee about them if the invitor "should anticipate the harm despite such knowledge or obviousness." *Ex parte Gold Kist, Inc.*, 686 So.2d 260, 261 (Ala. 1996). The slightly raised domes in the pavement are readily

observable to the naked eye. It was daylight on the day in question and Plaintiff's view of them was unobstructed. And, Plaintiff regularly visited the premises. Therefore, the court has no hesitation in holding that the truncated domes were open and obvious as a matter of law. *See Ex parte Neese,* 819 So.2d at 590 (affirming a trial court's judgment determining that a wet doormat was an open and obvious condition on invitor's property when invitee had visited weekly for many years and had admitted to having avoided stepping onto the doormat on the day of her injury out of precaution because it had been raining). "An invitor [] facility has no duty to warn invitees of commonplace tripping hazards that are open and obvious." *Sheikh v. Lakeshore Found.*, 64 So. 3d 1055, 1061 (Ala. Civ. App. 2010).

Because the truncated domes on which Plaintiff tripped were open and obvious, Defendant had no duty to warn Plaintiff that they might be a tripping hazard. Therefore, Plaintiff has failed to establish that Defendant breached any duty of care, and Defendant is entitled to summary judgment on Plaintiff's negligence claim.[4]

Finally, even if it could be said that the truncated domes on which Plaintiff tripped were not open and obvious (and, to be clear, the undisputed evidence in the Rule 56 record shows that they were actually open and obvious), Plaintiff's negligence claim fails for yet another reason. The federal regulations adopted under the ADA required Defendant to install the truncated domes when it built the store in 2002. It follows that, as a matter of law and logic, Defendant cannot be sued in negligence for merely (and properly) installing and maintaining the truncated

---

[4] Defendants also argue that while Plaintiff claims her injury occurred on a Friday, she did not seek medical treatment until the following Monday, and records from her initial doctor's visit show that she indicated the injury occurred at home, and subsequent records show that she indicated she was injured while she "step[ped] down off the curb." (*See* Doc. #29 at 6, p. 20-22). Each of these contentions is in dispute, and the court has not considered them in making its ruling.

domes which federal law required it to have as part of its new construction of a store.[5] *See Chandler v. Ariz. Partners Retail Inv. Grp. LLC*, 329 Fed. Appx. 724, 725-26 (9th Cir. 2009) (finding ADA regulations governing specific aspect of curb ramps influence evidentiary and legal considerations of negligence and negligence per se). *Cf. Jairath v. Dyer*, 154 F.3d 1280, 1281 (11th Cir. 1998) (finding under a state law negligence per se-type claim "[t]he ADA created the duty which served as the basis for [the plaintiff]'s state law claim").

### B. Wantonness

Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result."[6] *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala. 1994) (emphasis in original)). *See also* Ala. Code § 6–11–20(b)(3) (1975) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others."). Alabama courts have repeatedly recognized that wantonness and negligence are qualitatively differently tort concepts[,]" and "wantonness is not merely a higher degree of culpability than negligence." *Ex parte Essary*, at 9 (quoting *Tolbert v. Tolbert*, 903 So.2d 103, 114-15 (Ala. 2004); *Mandella v. Pennington*, 73 So.3d 1257, 1264 (Ala. Civ. App. 2011) (citations omitted). Accordingly, in cases arising from car accidents, proving a driver's wantonness, "requires more

---

[5] Plaintiff cites to a number of studies and surveys which question the wisdom and propriety of using truncated domes. But there is a substantial difference between (1) a duty created when Congress passes a statute and administrative agencies (who are tasked with implementing the subject legislation) adopt rules and regulations such as those at issue here, and (2) a group of persons from an industry (even experts within that industry) critiquing the wisdom of those regulations and requirements. The court recognizes that certain individuals disagree with the propriety of using truncated domes. That does not change the fact that the law required their installation in 2002.

[6] An employer can be liable for the wanton acts of its employee if the employee's wanton acts were committed within the course and scope of his employment. *See Cheshire v. Putman*, 54 So.3d 336, 341 (Ala. 2010).

than a showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability." *Ex parte Anderson*, 682 So.2d 467, 469 (Ala. 1996) (citing *George v. Champion Ins. Co.*, 591 So.2d 582 (Ala. 1991)).

Plaintiff argues that Defendant was consciously aware that the truncated domes were likely to cause injury because another customer had fallen on them some three years before Plaintiff fell. Plaintiff further speculates that there may have been more falls. But this argument completely ignores the fact that the domes were required, open and obvious, and further that over the course of many years, many customers have come and gone without injury (including Plaintiff). The evidence that one other customer, three years earlier, fell on the truncated domes does not show the requisite state of mind to sustain a wantonness claim. *Powell v. Piggly Wiggly Alabama Distrib. Co.*, 60 So. 3d 921, 927 (Ala. Civ. App. 2010) (citing *Ex parte Essary*, 992 So.2d 5, 12 (Ala.2007) (equating wantonness to "reckless indifference to a known danger likely to inflict injury")).

Plaintiff has not presented the court with any evidence about the state of mind of any employee of Defendant suggesting that the continued use of the truncated domed pavement is evidence of wanton conduct. "Evidence that an accident occurred, without evidence that the defendant or its agents were conscious of … the potential for injury, is insufficient to prove wantonness under Alabama law." *Katrensky v. United States*, 732 F. Supp. 2d 1194, 1203-04 (M.D. Ala. 2010).

### C. Negligence Per Se

"The doctrine of negligence per se or negligence as a matter of law arises from the premise that the legislature may enact a statute that replaces the common-law standard of the

reasonably prudent person with an absolute, required standard of care." *Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 930-31 (Ala. 2005) (citing *Thomas Learning Ctr., Inc. v. McGuirk*, 766 So.2d 161, 171 (Ala. Civ. App. 1998)). "To establish negligence per se, a plaintiff must prove: (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury." *Cook's Pest Control, Inc. v. Rebat*, 28 So.3d 716, 726 (Ala. 2009) (quoting *Dickinson v. Land Developers Constr. Co.*, 882 So.2d 291, 302 (Ala. 2003)).

Not only has Plaintiff presented no argument in response to Defendant's Motion for Summary Judgment on this claim, she has not identified any statutes that she claims Defendant violated.[7]  Therefore, Defendant is entitled to summary judgment on this claim.

### D.     Defendant's Motion to Strike

Defendant's Motion seeks to strike the affidavit of Ernest McGlothan, filed in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.   (Doc. # 34). McGlothan's affidavit was not disclosed until it was filed in response to Defendant's Motion for Summary Judgment.  It is dated September 23, 3015.  (Doc. # 30- 4).

Under the court's September 18, 2014 Scheduling Order (Doc. # 10) any report from a retained expert was due from Plaintiff by December 15, 2014.  This deadline was not extended. McGlothan's affidavit is due to be stricken as untimely.  *See Borum v. Werner Co.*, 2012 WL

---

[7] In fact, the only regulation in evidence provided for the use of these truncated domes as a detectable warning.  28 C.F.R. Part 36, Appendix A (1993); ADAAG § 4.29.2 ("Detectable warnings shall consist of raised truncated domes with a diameter of nominal 0.9 in (23 mm), a height of nominal 0.2 in (5 mm) and a center-to-center spacing of nominal 2.35 in (60 mm) and shall contrast visually with adjoining surfaces, either light-on-dark, or dark-on-light.").

2047678, *11 (N.D. Ala. 2012) (excluding expert's affidavit filed after the close of discovery, and after defendant had moved for summary judgment and also moved to strike the expert's testimony). The court has not considered it in this ruling.

## IV. Conclusion

For all of the foregoing reasons, Defendant is entitled to summary judgment on all of Plaintiff's claims. A separate order will be entered.

**DONE** and **ORDERED** this March 24, 2016.

                                            **R. DAVID PROCTOR**
                                            UNITED STATES DISTRICT JUDGE